UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOHN WARTLEY,

        Plaintiff,              Case No. 2:24-cv-79

v.                                    Honorable Paul L. Maloney

UNKNOWN HOFFMAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues Assistant Deputy Warden Unknown Hoffman and Resident Unit Manager Marsha Nurkala.

Plaintiff alleges that he was transferred to AMF on January 11, 2023, "under the false pretense of an STG II (Security Threat Group) prisoner due to falsified documents that have been filed in his prisoner record since back in 2013." (Compl., ECF No. 1, PageID.2.) Plaintiff contends that since his arrival at AMF, he "managed to go 13 months ticket free and earned level 2 management points" during his annual classification screening, which was conducted on December 28, 2023. (*Id.*)

Plaintiff has made numerous attempts to be placed on the list to be transferred to a Level 4 facility. (*Id.*, PageID.3.) Plaintiff wants to be transferred to receive parole. (*Id.*) He contends that it is "common knowledge that prisoners held in a supermax facility have a lesser chance of being granted a parole even if they are not true level 5 prisoners per classification." (*Id.*)

Plaintiff sent a kite to Defendant Hoffman on November 16, 2023, asking about transferring to a Level 4 facility. (*Id.*) According to Plaintiff, the kite was intercepted by Defendant Nurkala. (*Id.*) Plaintiff contends that Defendant Nurkala relied upon false documentation in Plaintiff's record and acted contrary to MDOC policy when she responded to the kite. (*Id.*) Defendant Nurkala told Plaintiff that he could not transfer to a Level 4 facility "without CFA and EMS approval" and noted that Plaintiff just became "1 year ticket free after multiple serious [and] assaultive misconducts." (*Id.*) Defendant Nurkala noted that she was not recommending that Plaintiff be transferred to a Level 4 facility. (*Id.*)

Plaintiff followed up with multiple kites to Defendants in December of 2023, telling them "that his parole hearing was nearing soon and that his eligibility to obtain a parole was in jeopardy due to his capricious placement in a supermax facility." (*Id.*) Defendant Hoffman responded to

one kite, telling Plaintiff that he had "no right to any particular placement and that there is no liberty interest in receiving a parole." (*Id.*) Plaintiff filed a grievance about the issue in January of 2024, but claims that it was never processed. (*Id.*, PageID.4.)

Plaintiff saw the Parole Board on March 18, 2024. (*Id.*) On March 21, 2024, the Parole Board denied Plaintiff parole, in part "due to his placement in a maximum[-]security facility." (*Id.*) Plaintiff subsequently filed another grievance against Defendants on March 26, 2024. (*Id.*)

Based on the foregoing, Plaintiff contends that Defendants violated his Fourteenth Amendment due process rights by refusing to transfer Plaintiff to a lower-level facility, thereby causing Plaintiff to be denied parole. (*Id.*, PageID.5.) Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As set forth above, Plaintiff contends that Defendants violated his Fourteenth Amendment due process rights by refusing to transfer Plaintiff to a lower-level facility, thereby causing Plaintiff to be denied parole. (Compl., ECF No. 1, PageID.5.) "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See*

4

*Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As relevant to Plaintiff's claim, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Moreover, while it is clear that Plaintiff did not want to be placed at AMF and believes that his placement there, in part, caused him to be denied parole, Plaintiff has not suggested that his placement at AMF was an atypical and significant deprivation. For these reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendants regarding their refusal to transfer him to a lower-level facility.

Furthermore, there is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

5

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the United States Court of Appeals for the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Given this authority, Plaintiff has no reasonable expectation of liberty until he has served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Thus, any alleged interference by Defendants with Plaintiff's parole prospects does not implicate a federal right. Accordingly, any Fourteenth Amendment procedural due process claims regarding Plaintiff's opportunity for parole will be dismissed.

Finally, to the extent that Plaintiff intended to raise Fourteenth Amendment substantive due process claims against Defendants, as explained below, he fails to state such claims. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga*

6

*Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here, Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim. Accordingly, any intended Fourteenth Amendment substantive due process claims will also be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

7

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  June 4, 2024                                  /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge